UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CONROAD ASSOCIATES, L.P., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00750-JMS-MKK |
| | ) | |
| CASTLETON CORNER OWNERS ASSOCIATION, INC., | ) | |
| AT CASTLETON IN OWNER, LLC, AT CASTLETON | ) | |
| IN ASSOCIATION MANAGER, LLC, ARCITERRA | ) | |
| COMPANIES, LLC, JONATHAN M. LARMORE, | ) | |
| CRYSTAL SCUDDER, and JAMES C. SHOOK, JR., | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| CASTLETON CORNER OWNERS ASSOCIATION, INC., | ) | |
| | ) | |
| *Counter Claimant,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONROAD ASSOCIATES, L.P., | ) | |
| | ) | |
| *Counter Defendant.* | ) | |

## **ORDER**

Plaintiff Conroad Associates, L.P. ("Conroad") initiated this litigation against Defendants

Castleton Corner Owners Association, Inc. (the "Association"), AT Castleton IN Owner, LLC, AT

Castleton IN Association Manager, LLC, Arciterra Companies, LLC ("Arciterra"), Jonathan M.

Larmore, Crystal Scudder, and James C. Shook, Jr. asserting claims for breach of the Association's

governing documents, fraud, and breach of fiduciary duty, among other claims. [Filing No. 29.]

Defendants have filed a Motion for Judgment on the Pleadings, [Filing No. 54], which is now ripe

for the Court's review.

1

## I.
### MOTION FOR JUDGMENT ON THE PLEADINGS STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings."  Pleadings include "the complaint, the answer, and any written instruments attached as exhibits." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 312 (7th Cir. 2020) (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998)).  "The district court may also take judicial notice of matters of public record." *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991).

"Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party . . . is entitled to judgment as a matter of law." *Unite Here Loc. 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017).  In considering a motion for judgment on the pleadings, the Court must "view[] all facts and inferences in the light most favorable to the non-moving party." *Federated Mut. Ins. Co.*, 983 F.3d at 313.

## II.
### BACKGROUND

The following are the factual allegations set forth in the Second Amended Complaint, [Filing No. 29] – the operative complaint in this case – which the Court must accept as true at this time.  Where necessary to provide relevant background information, the Court also cites to Defendants' Answer.  [Filing No. 53.]

### A.     The Parties

Conroad owns property at a shopping center located at 5602 Castleton Corner Lane in Indianapolis, Indiana ("the Conroad Property").  [Filing No. 29 at 2.]  The Association, a non-profit corporation, owns and manages property located at the Castleton Corner Shopping Plaza

("Castleton Corner").  [Filing No. 29 at 2.]  Conroad is a 1.73% shareholder in the Association.

[Filing No. 29-8 at 28.]  The Association was formed to provide for the continuing maintenance

and administration of various shopping centers and stand-alone buildings that make up Castleton

Corner, including the Conroad Property.  [Filing No. 53 at 73.]  Mr. Larmore is the Association's

President, Mr. Shook is the Association's Vice President, and Ms. Scudder is the Association's

former Secretary.  [Filing No. 29 at 5.]  Defendant AT Castleton IN Owner, LLC is the current

owner of Castleton Corner.  [Filing No. 29 at 2-3.]  Defendant AT Castleton IN Association

Manager, LLC is the current property manager of Castleton Corner.  [Filing No. 29 at 3.]  Arciterra

is the parent company or an affiliate of the Association, AT Castleton IN Owner, LLC, and AT

Castleton IN Association Manager, LLC.  [Filing No. 29 at 4-5.]

### B.      The Governing Documents

The Association is governed by three documents: the Declaration, filed when the

Association formed in 1981; the Association's Articles of Incorporation (the "Articles"); and the

Association's By-Laws, agreed to when the Association was incorporated as a nonprofit in 1987

(collectively, the "Governing Documents").  [Filing No. 29 at 6.]

The Declaration states that the Association was formed for the purpose of developing,

using, and maintaining commercial development at Castleton Corner.  [Filing No. 29 at 6.]  Under

the terms of the Declaration, the Association is responsible for ensuring payment of maintenance

costs for common property at Castleton Corner, including roads, drainage ditches, and sewers, and

property owners at Castleton Corner are proportionately responsible to the Association for those

costs.  [Filing No. 29 at 7.]

The Articles establish that Class A Members are entitled to one vote per acre of real estate

owned by that member.  [Filing No. 29 at 9.]  The Articles also state that the purpose of the

Association is to provide for "ownership, operation, maintenance, repair, replacement and administration of drainage ditches, utility strips and sewers, including a sanitary sewer lift station [(the "Lift Station")] in Castleton Corner." [Filing No. 29-3 at 4.]

The By-Laws require that the Association meet at least annually and at "other necessary times, for the purpose of electing the Board of Directors, approving the annual budget, and for such other purposes as may be required by the Articles or [the] By-Laws." [Filing No. 29 at 10 (quotation omitted).] The By-Laws also require that the Association's Board have three Directors who each serve a term of one year or until their successors have been elected. [Filing No. 29 at 11.] Under the By-Laws, the Board is required to provide maintenance, repair, and preservation of Castleton Corner infrastructure, including the Lift Station. [Filing No. 29 at 11.] Further, the Board is required to prepare a budget for the Association and distribute it to members. [Filing No. 29 at 12.] The By-Laws also require members to pay an annual assessment. [Filing No. 29 at 13.] Under the By-Laws, the Board is responsible for electing officers, including a President, Vice President, Secretary, and Treasurer. [Filing No. 29 at 13.]

### C.   The Lift Station and the Flood

Between 2002 and 2005, the Lift Station malfunctioned on several occasions. [Filing No. 29 at 13-14.] The Association was aware of these malfunctions as well as other persistent problems with the Lift Station. [Filing No. 29 at 14.] On February 15, 2015, the Lift Station failed, causing a large amount of sewage to flood the Conroad Property ("the Flood"). [Filing No. 29 at 13.] The Flood forced Conroad's tenant to cease business operations at the Conroad Property and resulted in a termination of the lease between Conroad and its tenant. [Filing No. 29 at 13–14.] The Conroad Property was heavily damaged, and Conroad was required to undertake remediation measures. [Filing No. 29 at 14.] After the Flood occurred, the Lift Station continued to have

4

problems which have not been remedied and continue to affect the Conroad Property. [Filing No. 29 at 14.]

D. **The Association's Status**

Meanwhile, although the Association was administratively dissolved by the State of Indiana on April 14, 2005, the Association told its members at a meeting in 2016 that "all necessary documents [had] been filed to bring [the Association] into good standing and will be maintained [going] forward with annual filing as necessary." [Filing No. 29 at 20.] No filings were made to reinstate the Association until July 23, 2020, when the Association applied for reinstatement under Indiana's COVID-19 Executive Order 20-23, which allowed for reinstatement of corporations without regard to a statutory five-year limitation on reinstatement after administrative dissolution. [Filing No. 29 at 22.] The Association held four meetings during the period of administrative dissolution – on December 14, 2005, December 17, 2015, July 26, 2016, and December 15, 2016 – which gave the appearance that the Association was lawfully operating. [Filing No. 29 at 20.]

The Association also received a $54,000 loan from Arciterra on February 21, 2020 and continued to spend money between January 2020 and March 2020. [Filing No. 29 at 21.] From 2005 to 2020, the Association took numerous actions that did not constitute "wind-down" activities under Indiana law, including collecting dues and levying assessments against Association members, using those dues and assessments, hosting Association meetings, naming new Association officers, entering into various agreements on behalf of the Association (including agreements relating to the Lift Station), and taking out loans on behalf of the Association. [Filing No. 29 at 21.]

Conroad alleges that the Association or its officers breached the Governing Documents by: (1) improperly allowing the Association to be administratively dissolved; (2) misrepresenting to

members that the Association was in good standing; (3) not properly electing a Board of Directors; (4) improperly electing Mr. Larmore, Ms. Scudder, and Mr. Shook as officers of the Association; (5) even if Ms. Scudder was properly elected as Secretary of the Association, not properly electing a Secretary before she took the position in 2015; (6) not having a treasurer, as required under the By-Laws; (7) failing to maintain a Board-designated bank account monitored and used by a properly elected treasurer; (8) failing to conduct required annual meetings; (9) failing to provide requisite notice to members regarding the four meetings that were held; (10) failing to properly disseminate the budget to Association members or seek members' approval; (11) taking actions, through Mr. Larmore, without members' approval and to their detriment, including filing for bankruptcy and entering into contracts worth more than $3,000; and (12) changing the Association's principal place of business to a location in Arizona without Board approval. [Filing No. 29 at 23–25.]

    E.    **The State Court Lawsuit**

    On December 22, 2016, Conroad filed a lawsuit in Marion Superior Court ("the State Court Lawsuit") against the Association and McKinley, Inc. ("McKinley"), the former owner of Castleton Corner. [Filing No. 29 at 4; Filing No. 53 at 76; Filing No. 53-1.] Conroad alleged that the Association and McKinley were liable for damages to the Conroad Property and asserted claims for negligence, breach of contract, and breach of fiduciary duty. [Filing No. 53-1 at 6-7.] Following a bench trial, the Marion Superior Court entered judgment for Conroad on its breach of contract claim against the Association and awarded Conroad $213,288.70, but found that Conroad had not sustained its burden of proof on any other claims. [Filing No. 29-5 at 28.]

    The Association appealed the trial court's judgment to the Indiana Court of Appeals, and Conroad cross-appealed. *Castleton Corner Owners Ass'n, Inc. v. Conroad Assocs., L.P.*, No. 19A-

PL-02687.  On October 30, 2020, the Indiana Court of Appeals affirmed the underlying judgment but reversed in part the damages calculation and remanded with instructions to amend that calculation.  *Castleton Corner Owners Ass'n, Inc. v. Conroad Assocs., L.P.*, 159 N.E.3d 604, 616 (Ind. Ct. App. 2020) ("*Conroad I*").  The Court of Appeals' decision was certified and became final on December 29, 2020.  *Castleton Corner Owners Ass'n, Inc. v. Conroad Assocs., L.P.*, No. 19A-PL-02687.

While *Conroad I* was pending on appeal, proceedings supplemental continued at the trial court and the Association filed a notice of appeal of the trial court's proceedings supplemental order.  *Castleton Corner Owners Association v. Conroad Associates, L.P.*, No. 20A-PL-01253 ("*Conroad II*").  The Association later moved for dismissal of *Conroad II*, which the Court of Appeals granted on May 19, 2021.  *Id.*  Prior to the dismissal of *Conroad II*, the trial court issued additional proceedings supplemental orders in May 2021, which the Association also appealed.  *Conroad Assocs., L.P. v. Castleton Corner Owners Ass'n, Inc.*, No. 21A-PL-1125 ("*Conroad III*").

On April 13, 2022, the Court of Appeals issued a decision in *Conroad III* affirming the trial court's May 2021 orders.  *Conroad Assocs., L.P. v. Castleton Corner Owners Ass'n, Inc.*, 187 N.E.3d 885 (Ind. Ct. App. 2022).  The Supreme Court granted transfer of *Conroad III* on September 1, 2022.  *Conroad Associates, L.P. v. Castleton Corner Owners Association, Inc.*, 194 N.E.3d 594 (Ind. 2022).

## F.    This Lawsuit

Conroad filed this suit on April 13, 2022, [Filing No. 1], and Defendants answered on November 4, 2022, [Filing No. 53], and simultaneously filed their Motion for Judgment on the Pleadings, [Filing No. 54].  In its Second Amended Complaint, Conroad asserts fourteen claims:

- Count I - a declaratory judgment against the Association seeking a declaration that during administrative dissolution, the Association failed to conduct "wind-

down" business activities and held itself out as a fully operating corporation from 2005 through 2020, and that all actions by the Association during that time are void;

- Count II - a declaratory judgment against the Association seeking a declaration that the Association was never properly reinstated as a corporation and remains in administrative dissolution or that the Association applied for reinstatement under false pretenses;

- Count III - a declaratory judgment against Mr. Larmore, Mr. Shook, and Ms. Scudder (collectively, "the Individual Defendants") and the Association seeking a declaration that the Individual Defendants have never been validly appointed officers of the Association and that all actions taken by the Individual Defendants for or on behalf of the Association are void;

- Count IV - injunctive relief against the Association and the Individual Defendants, requiring the Individual Defendants to step down as officers of the Association and the Association to properly elect a Board of Directors;

- Count V - breach of the Declaration against the Association and the Individual Defendants;

- Count VI - breach of the Articles against the Association and the Individual Defendants;

- Count VII - breach of the By-Laws against the Association and the Individual Defendants;

- Count VIII - fraud against the Association and the Individual Defendants;

- Count IX - constructive fraud against the Association and the Individual Defendants;

- Count X – fraud and conspiracy to commit fraud against all Defendants;

- Count XI - breach of fiduciary duty against the Individual Defendants;

- Count XII - piercing the corporate veil/alter ego liability against all Defendants;

- Count XIII - treble damages under the Indiana Crime Victims' Relief Act against all Defendants; and

- Count XIV - injunctive relief against the Association,[1] requiring the Association to cease holding itself out as a valid corporation and to end all corporate functions exceeding the activities permitted for a dissolved corporation, submit an accounting of all funds spent and all dues collected between 2005 and 2020, and submit assurances that the Lift Station, as well as all other common property and fixtures, will remain properly functional.

[Filing No. 29 at 26–40.]

On March 24, 2023, after briefing on the Motion for Judgment on the Pleadings closed, the Indiana Supreme Court issued its opinion in *Conrad III*, affirming in part and reversing in part the judgment of the Court of Appeals. *Conroad Associates, L.P. v. Castleton Corner Owners Association, Inc.*, 205 N.E.3d 1001 (Ind. 2023). Post-judgment proceedings are all but concluded in the state trial court. *See* August 1, 2023 Order in *Conroad Associates, L.P. v. Castleton Corner Owners Association, Inc., McKinley, Inc.*, No. 49D01-1612-PL-044978.

### III.
### DISCUSSION

Defendants set forth numerous arguments in support of their Motion for Judgment on the Pleadings, which the Court restates and re-orders as follows: (1) that Conroad lacks standing to request the declaratory relief that it seeks in Counts I, II, and III; (2) that the *Colorado River* doctrine requires either dismissal of this case or a stay until all state court proceedings conclude; (3) that the Court lacks personal jurisdiction over Ms. Scudder; (4) that the doctrine of *res judicata* precludes all of Conroad's claims; (5) that Conroad cannot properly bring breach of contract claims against the Individual Defendants; (6) that Conroad has failed to allege its fraud claims (Counts VIII, IX, and X) with the particularity required by Federal Rule of Civil Procedure 9(b); (7) that

---

[1] Although Count XIV refers to "stop[ping] the Defendants from continuing their pattern of breach of the Association's Governing Documents and fraud," [Filing No. 29 at 40], it only seeks injunctive relief related to the Association. The Court finds that Count XIV is only asserted against the Association.

Conroad cannot seek injunctive relief in Counts IV and XIV for the Individual Defendants' actions; and (8) that Count XI is a derivative claim and Conroad has failed to meet the requirements of Federal Rule of Civil Procedure 23.1.  The Court addresses each argument in turn.

### A.   Standing

Defendants argue that Conroad lacks standing to seek declaratory relief in Counts I, II, and III.  [Filing No. 55 at 17-19.]  They assert that members of associations do not have standing to challenge the status and rights of the Association or its directors and officers and that the State of Indiana is the proper party to do so.  [Filing No. 55 at 18.]  Defendants also claim that Conroad should not be permitted to make a "backdoor challenge" to the Indiana Secretary of State's decision to reinstate the Association's incorporated status.  [Filing No. 55 at 18.]  They argue further that Conroad's attempt to invalidate the Association's reinstatement could only have been brought against the Indiana Secretary of State because it is a challenge to the Secretary's actions, rather than the Defendants'.  [Filing No. 55 at 18-19.]

Conroad responds that, as a member of the Association, it has standing to challenge the Association's actions and to seek equitable relief for the Association's legal wrongs, and that Defendants' suggestion that only the State of Indiana can do so defies both Indiana law and essential notions of justice.  [Filing No. 78 at 11-12.]  It argues that requiring Conroad to enlist the aid of the state to oppose improper actions would permit misconduct by the Association's members and officers unless Conroad were able to catch the attention of a prosecutor or the Attorney General.  [Filing No. 78 at 13.]  Conroad contends that it is not challenging the Indiana Secretary of State's actions with regard to the Association's reinstatement, but rather the Association's misrepresentations made to the Secretary of State to obtain reinstatement.  [Filing No. 78 at 14.]

Defendants reply that while a derivative action on behalf of the Association may have been available under Indiana law, Conroad has brought a direct action on its own behalf which is not permitted. [Filing No. 79 at 6.] They also contend that the Secretary of State would be the real party in interest to bring a claim regarding alleged misrepresentations because the Secretary was injured, not Conroad. [Filing No. 79 at 6 n.2.]

The parties point the Court to two Indiana cases purportedly addressing whether a non-profit corporation member has standing to pursue declaratory relief related to the corporation's actions. In *Kirtley v. McClelland*, the Indiana Court of Appeals considered whether a shareholder of a non-profit corporation could bring an action for "irregularities in the management" of the non-profit and examined "whether an equitable forum is available to a corporation formed for purposes other than pecuniary gain to redress injury to its property and interests." 562 N.E.2d 27, 29 (Ind. Ct. App. 1990). While finding that "few examples of derivative actions brought by members of not-for-profit corporations or incorporated associations can be found in Indiana case law," the court was "convinced that equitable redress would have been available at common law for members of a nonprofit corporation or an incorporated voluntary association had such plaintiffs sought to utilize it." *Id.* at 29-30. Although the court in *Kirtley* acknowledged the availability of equitable relief, 562 N.E.2d at 30, the plaintiffs in *Kirtley* brought a derivative action and the court's analysis appears to be limited to that context.[2]

In *Brenner v. Powers*, the Indiana Court of Appeals addressed whether the plaintiff, a former member of a non-profit health services corporation, had standing to seek a declaratory

---

[2] Though the Court finds below that Count XI of the Second Amended Complaint is improperly brought as a direct claim rather than a derivative claim, that analysis applies only to Count XI. Count III of the Second Amended Complaint is not pled as a derivative claim, and Conroad does not argue that it was.

judgment on behalf of a class of members regarding the non-profit's current members' "status and rights." 584 N.E.2d 569, 571-72 (Ind. Ct. App. 1992).  The Indiana Court of Appeals noted that the Uniform Declaratory Judgment Act provides that in order to seek a declaratory judgment, "a party must have a substantial present interest in the relief sought and the party must show that a question has arisen affecting his rights which ought to be decided in order to safeguard such rights." *Id.* at 574.  It held that the plaintiff had standing to seek a declaration that his membership was illegally usurped, but that he did not have standing to pursue "the remedy of declaratory judgment . . . declaring the status and rights of the defendants and their activities." *Id.* at 574 (emphasis omitted).  The Court stated that the plaintiffs "were not the real parties in interest for such declaratory relief because they had no rights to such relief," but rather "[t]he state is the proper party to challenge the ultra vires activities of non-profit corporations. . . . Members of the corporation have no such powers." *Id.*[3]

Like the plaintiff in *Brenner*, Conroad seeks declarations regarding Defendants' rights and activities.  Specifically:

- In Count I, it seeks a declaration that the Association failed to conduct wind-down activities it was required to conduct pursuant to Indiana law (such as filing tax returns and preserving the Association's assets) and that all actions taken by the Association inconsistent with Indiana law regarding the winding down of a dissolved corporation are null, void, and must be unwound;

- In Count II, it seeks a declaration that the Association was not reinstated, remains in administrative dissolution, and cannot apply for reinstatement or, in the alternative, a declaration that the Association filed for reinstatement under false pretenses; and

---

[3] Although the plaintiff in *Brenner* alleged that he was a member of the corporation, the Indiana Court of Appeals found that, according to exhibits attached to the complaint, he was no longer a member.  But the court's conclusion that the plaintiff could not seek a declaratory judgment related to "the ultra vires activities" of the corporation was not dependent on plaintiff's membership status, as the Court explicitly acknowledged that even "[m]embers of the corporation have no such powers" to seek a declaratory judgment related to the corporation's ultra vires activities. *Brenner,* 584 N.E.2d at 574.

- In Count III, it seeks a declaration that Mr. Larmore, Mr. Shook, and Ms. Scudder are and were not valid officers of the Association and that any actions taken by them, or by the Association at their direction, are void *ab initio*.

[Filing No. 29 at 26-29.]  The declarations Conroad seeks in Counts I, II, and III relate to the "status and rights of [Defendants] and their activities," *Brenner*, 584 N.E.2d at 574, and Conroad does not have standing to seek such relief.  The Court also notes that several Indiana statutes address the authority to remove officers of a corporation and challenge the acts of a corporation.  Specifically, Indiana Code § 23-17-12-13 allows the circuit or superior court of the county where a corporation's principal office is located to remove the director of a corporation:

> in a proceeding commenced by the corporation or at least ten percent (10%) of the members of a class entitled to vote for directors, if the following conditions exist:
>
> (1) The court finds that:
>
>> (A) the director engaged in:
>>
>>> (i) fraudulent or dishonest conduct; or
>>>
>>> (ii) gross abuse of authority or discretion;
>>
>> with respect to the corporation; or
>>
>> (B) a final judgment has been entered finding that the director has violated a duty under IC 23-17-13.
>
> (2) Removal is in the best interests of the corporation.

Indiana Code § 23-17-14-3 addresses when an officer may be removed, stating that "(c) A board of directors may remove an officer at any time with or without cause. (d) An officer who appoints another officer or assistant officer may remove the appointed officer or assistant officer at any time with or without cause." Indiana Code § 23-17-4-4 provides that "(a) [e]xcept as provided in subsection (b), the validity of corporate action may not be challenged on the ground that the

13

corporation lacks or lacked power to act. (b) A corporation's power to act may be challenged in a proceeding against the corporation for a declaratory judgment or to enjoin an act where a third party has not acquired rights. The proceeding may be brought by the attorney general or a director."

Based on the above-listed Indiana Code provisions and the Indiana Court of Appeals' decision in *Brenner*, the Court finds that Conroad does not have standing to seek the declaratory relief requested in Counts I, II, and III, and **GRANTS** Defendants' Motion for Judgment on the Pleadings as to those Counts.

### B. *Colorado River* Abstention

Defendants argue in support of their Motion for Judgment on the Pleadings that the *Colorado River* abstention doctrine requires the Court to dismiss this action pending resolution of the State Court Lawsuit. [Filing No. 55 at 10.] They argue that this lawsuit and the State Court Lawsuit are parallel because, although they involve different parties, they arise out of the same facts and raise similar legal issues. [Filing No. 55 at 11.] Defendants urge the Court to find that the factors courts consider in determining whether abstention is appropriate nearly all weigh in favor of abstention. [Filing No. 55 at 12-14.]

Conroad responds that this lawsuit and the State Court Lawsuit are not parallel to each other. [Filing No. 78 at 9.] It asserts that the State Court Lawsuit focuses solely on a property damage claim, while this lawsuit relates to other issues and there is no need for the Court to address any factors used in determining whether abstention is appropriate. [Filing No. 78 at 8-9.] Conroad further argues that a stay of this case, not dismissal, would be the appropriate remedy were the Court to find *Colorado River* abstention appropriate here. [Filing No. 78 at 9.] Conroad also asserts that the State Court Lawsuit is no longer ongoing and "all that remain are judgment-execution issues." [Filing No. 78 at 9.]

14

Defendants reply that this lawsuit and the State Court Lawsuit are parallel, that there is no need to demonstrate that the cases are identical under *Colorado River*, and that the central issues of the cases are the same. [Filing No. 79 at 3.] They argue that the State Court Lawsuit necessarily involved a determination of the rights and responsibilities of the various entities that are parties to this lawsuit, especially relating to the Lift Station, and that such a determination is exactly what Conroad is seeking in this case. [Filing No. 79 at 4.] Finally, they argue that the State Court Lawsuit is ongoing because the Indiana Supreme Court decision was pending at the time of briefing. [Filing No. 79 at 3.]

The *Colorado River* abstention doctrine permits a federal court to stay or dismiss a suit "when there is a concurrent state proceeding and the stay would promote 'wise judicial administration.'" *Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976)). "The primary purpose of the *Colorado River* doctrine is to conserve both state and federal judicial resources and prevent inconsistent results." *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014).

The Seventh Circuit has adopted a two-step inquiry in determining whether the *Colorado River* doctrine applies. *Loughran v. Wells Fargo Bank*, N.A., 2 F.4th 640, 647 (7th Cir. 2021). Initially, courts ask "whether the concurrent state and federal actions are . . . parallel." *Id.* (quoting *DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 953 F.3d 469, 477 (7th Cir. 2020)). "At bottom, the 'critical question' is whether there is a 'substantial likelihood that the state litigation will dispose of all claims presented in the federal case.'" *Loughran*, 2 F.4th at 647 (quoting *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011)). If the two actions are not parallel, the analysis ends, and the federal court must not abstain. *See Loughran*, 2 F.4th at 647.

If the two cases are parallel, courts move on to the second step of the inquiry and "consider 'whether the necessary exceptional circumstances exist to support a stay or dismissal.'" *Id.* (quoting *Deputy Sythes Sales*, 953 F.3d at 477).  A number of factors have been laid out by courts as helpful to inform such an inquiry, including:

> 1. Whether the case concerns rights in property, and if so, whether the state has assumed jurisdiction over that property; 2. The inconvenience of the federal forum; 3. The desirability of consolidating litigation in one place—that is, the value in avoiding "piecemeal" litigation; 4. The order in which jurisdiction was obtained in the concurrent fora; 5. The source of governing law—federal or state; 6. The adequacy of the state court action to protect the federal plaintiffs' rights; 7. The relative progress of the state and federal proceedings; 8. The presence or absence of concurrent jurisdiction; 9. The availability of removal; and 10. Whether the federal action is vexatious or contrived.

*Loughran*, 2 F.4th at 647.  "This list . . . is primarily useful as a heuristic aid: it is designed to be helpful, not a straitjacket."  *Id.*  "'[N]o one factor is necessarily determinative' and the careful weighing of all factors is necessary to determine whether circumstances exist warranting abstention."  *Freed*, 756 F.3d at 1018 (quoting *Colorado River*, 424 U.S. at 818–19)).

The Court finds that Defendants' *Colorado River* abstention argument fails at the outset. Defendants base their argument that the State Court Lawsuit remains ongoing on the fact that the Indiana Supreme Court's decision in *Conroad III* remains pending.  But the Indiana Supreme Court issued a decision in *Conroad III* on March 24, 2023, and the execution on the original judgment is now all but completed.  So, the State Court Lawsuit is not ongoing and *Colorado River* abstention is not appropriate.  Because final judgment has been entered in the State Court Lawsuit, the State Court will not be addressing any of the substantive claims asserted by Conroad in this case.  The only remaining issues relate to collection of the state court judgment.

Because this action is not parallel to the State Court Lawsuit since the State Court Lawsuit has concluded, the Court **DENIES** Defendants' Motion for Judgment on the Pleadings to the extent it finds that abstention under the *Colorado River* doctrine is inappropriate.

### C.   Personal Jurisdiction Over Ms. Scudder

Defendants argue that the Court lacks personal jurisdiction over Ms. Scudder because she is a citizen of Arizona and has not had contacts with Indiana outside of her former position as Secretary of the Association.[4]   [Filing No. 55 at 15.]  They argue that the Court should decline to exercise personal jurisdiction over Ms. Scudder based on the corporate shield doctrine, which prohibits a court from exercising personal jurisdiction over an individual solely on the basis that the individual was the fiduciary of a corporation. [Filing No. 55 at 16.]  Defendants attach a Declaration from Ms. Scudder detailing her lack of contact with Indiana.  [Filing No. 55-1.]

In its response, Conroad argues that courts within this District have declined to apply the corporate shield doctrine because Indiana's long-arm statute is "coextensive with the full reach of federal due process."  [Filing No. 78 at 10 (quotation and citation omitted).]  Conroad further contends that it alleges that Ms. Scudder engaged in specific misconduct that demonstrates sufficient contact with the forum, including actions she took with or at the instruction of Mr. Larmore – who is also an Arizona citizen like Ms. Scudder.  [Filing No. 78 at 10.]

Defendants reply that Conroad has not met its burden to produce evidence establishing personal jurisdiction. [Filing No. 79 at 5.]  They argue that Conroad cannot rest on mere allegations and that the Court must decline to exercise personal jurisdiction over Ms. Scudder because Conroad failed to submit any affirmative evidence showing sufficient contacts between Ms. Scudder and the State of Indiana. [Filing No. 79 at 5.]

---

[4] Defendants do not contest the Court's personal jurisdiction over Mr. Larmore or Mr. Shook.

At the outset, the Court finds that Defendants' suggestion that Ms. Scudder be dismissed from this suit based on the corporate shield doctrine (also known as the fiduciary shield doctrine) is unavailing.  Despite lacking an explicit ruling from the Indiana Supreme Court as to whether the fiduciary shield doctrine would require dismissal in this context, district courts sitting in Indiana have held that "the fiduciary shield doctrine cannot be asserted to defeat personal jurisdiction in Indiana." *See, e.g.*, *Intermatic, Inc. v. Taymac Corp.*, 815 F. Supp. 290, 296 (S.D. Ind. 1993)).  For this reason, the Court will not decline to exercise personal jurisdiction over Ms. Scudder based on the corporate shield doctrine but will go on to consider the parties' remaining jurisdictional arguments.

"[O]nce the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).  Additionally, when presented with a personal jurisdiction challenge, a federal district court must first determine whether the exercise of personal jurisdiction comports with the forum state's law, then must determine whether such an exercise comports with the United States Constitution's Due Process Clause.  *Id.* at 779.  The Court need only consider the second step in this case because "Indiana Rule of Trial Procedure 4.4(a), . . . reduce[s] analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the [f]ederal Due Process Clause." *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006).

The Indiana Court of Appeals has explained the personal jurisdiction analysis under the Due Process Clause as follows:

> The Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant.  A state court may exercise personal jurisdiction over an out-of-state defendant who has certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions

18

of fair play and substantial justice.  There are two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction.  If the defendant has contacts with the forum state sufficient for general or specific jurisdiction, due process requires that the assertion of personal jurisdiction over the defendant is reasonable.  The assertion of personal jurisdiction will rarely be found unreasonable if minimum contacts are found.

*Spokane Kart Racing Ass'n v. Am. Kart Track Promoters Ass'n, Inc.*, 206 N.E.3d 462, 466 (Ind. Ct. App. 2023) (quotations and citations omitted).

Contacts with a state required to establish case-linked jurisdiction require the defendant to "take some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State."  *Id.* at 467 (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024–25 (2021)).  "A single contact with the forum State may be sufficient to establish specific jurisdiction if 'the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State.'"  *Spokane Kart Racing Ass'n*, 206 N.E.3d at 467 (emphasis omitted) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis omitted); *see also Boyer v. Smith*, 42 N.E.3d 505, 511 (Ind. 2015) ("[A] substantial connection to Indiana is the touchstone, because that is the only way defendants can reasonably anticipate being called into court here to defend themselves.") (emphasis omitted).

The parties do not dispute that Ms. Scudder, as a citizen of Arizona, is not subject to general personal jurisdiction in this Court.  The only issue, therefore, is whether the Court may exercise case-specific personal jurisdiction over Ms. Scudder.  Conroad sets forth the following allegations regarding Ms. Scudder:

- She was the Association's Secretary "for relevant time periods discussed" in the Second Amended Complaint, was AT Castleton IN Owner, LLC's representative during Association meetings in 2015, 2016, and 2020, and was the Asset Manager of AT Castleton IN Association Manager, LLC in 2016;

- She held herself out as Secretary of the Association between 2015 and 2020;

- She "engaged in a years-long scheme to defraud members of the Association by levying dues and assessments upon members, funneling them through various Arciterra subsidiaries, including [AT Castleton IN Owner, LLC, AT Castleton IN Association Manager, LLC], and McKinley, until Arciterra was able to use those funds for its own purposes";

- She "direct[ed] members to pay such dues and assessments";

- She "represented that the dues and assessments would be used for proper purposes under the Governing Documents";

- She "engaged in a pattern of wrongdoing that included violating the Association's Governing Documents, allowing the Association's active status in Indiana to lapse, pursuing reinstatement of the Association under false pretenses, and engaging in lies regarding the Lift Station's value"; and

- She attended a December 15, 2016 Annual Meeting of the Association's members.

[Filing No. 29.]

Ms. Scudder states in her Declaration that she has lived in Arizona since 2006 and served as Secretary of the Association from December 2015 to May 2020 – during the time period in which the majority of the alleged actions forming the basis of Conroad's claims took place. [Filing No. 55-1 at 2.] She also states that she was the Asset Manager of Arciterra from December 2015 to May 2020 and acted as the representative for AT Castleton IN Owner, LLC during Association meetings in 2015 and 2016, which were hold by teleconference and which she attended while physically located in Arizona. [Filing No. 55-1 at 3.] Ms. Scudder then states that she does not currently conduct business, work, own property, hold liens or mortgages, engage in any business related to insurance, or engage in other activities in Indiana. [Filing No. 55-1 at 3.]

The Court's focus in determining whether it has specific personal jurisdiction over Ms. Scudder is on her contacts with Indiana that relate to Conroad's claims – not on her contacts with Indiana now. *See Curry v. Revolution Laboratories, LLC*, 949 F.3d 385, 401 (7th Cir. 2020) (in order to establish specific personal jurisdiction, plaintiff was required to show that defendant had

"certain minimum contacts with [the forum state] by purposefully directing its activity at [the forum state] and availing itself of the benefits of conducting business there, and that these contacts related to his claims").  Because the Association is an Indiana corporation, regulated by Indiana law, and made up of members who own property in Indiana, Ms. Scudder purposefully availed herself of the privilege of conducting business in Indiana when she carried out her duties as Association Secretary.  The fact that she is no longer the Secretary is unavailing – she was the Secretary during the time period relevant to Conroad's claims.  And it is irrelevant that Ms. Scudder was in Arizona when she carried out the actions alleged in the Second Amended Complaint.  *See Id.* at 398 ("Our cases make clear…that physical presence is not necessary for a defendant to have sufficient minimum contacts with a forum state.").

In short, the Court declines to apply the corporate shield doctrine to find that it does not have personal jurisdiction over Ms. Scudder and instead finds that it has specific personal jurisdiction over her based on the allegations in the Second Amended Complaint, even in light of the information Ms. Scudder has provided in her Declaration.  The Court **DENIES** Defendants' Motion for Judgment on the Pleadings to the extent it finds that it has personal jurisdiction over Ms. Scudder.

### D.    Piercing the Corporate Veil Claim

In Count XII, Conroad alleges that it "is entitled to seek damages from any of the defendants to satisfy its damages as pled" based on a piercing the corporate veil theory.  [Filing No. 29 at 38-39.]  Defendants do not separately address Count XII in their opening brief in support of their Motion for Judgment on the Pleadings, but Conroad argues in its response brief that it has sufficiently alleged "a coherent case for piercing of the corporate veil – including by serious undercapitalization, the failure to keep corporate records and follow other formalities, fraudulent

representation by unelected controlling persons, the commingling of assets, and other manipulations of the corporate form to achieve personal ends." [Filing No. 78 at 17.]

In their reply, Defendants argue that the piercing the corporate veil theory exists only to protect innocent third parties who may be confused or deceived as to the identity of the corporate entity they are dealing with. [Filing No. 79 at 7.] They contend that Conroad is not an innocent third party and was not confused regarding who it was dealing with because it was a member of the Association. [Filing No. 79 at 7.]

Indiana courts have permitted the corporate veil to be pierced and liability for a corporation's acts and omissions to reach beyond the corporation itself in order to "prevent fraud or unfairness to third parties." *Stark v. State*, 204 N.E.3d 957, 965 (Ind. Ct. App. 2023) (quoting *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1232 (Ind. 1994)). However, "piercing the corporate veil is not a separate cause of action but rather a means of imposing liability for an underlying cause of action, such as breach of contract." *Michiana Dairy Processors, LLC v. All Star Beverage, Inc.*, 744 F.Supp.2d 790, 808 (N.D. Ind. 2010) (citing *RSR Corp. v. Avanti Dev. Inc.*, 2000 WL 1448705, at *11 (S.D. Ind. Mar. 31, 2000)). Accordingly, Count XII is **DISMISSED.** Should Conroad obtain a judgment in connection with its breach of contract claims in this action, it may seek to pierce the corporate veil to hold the Individual Defendants or entities other than the Association liable if it has a good faith basis to assert that theory in proceedings supplemental.

### E.     Res Judicata

Defendants assert that res judicata prohibits Conroad from asserting its claims in this lawsuit. [Filing No. 55 at 6-7.] Defendants contend that Conroad's claims could have been brought in the State Court Lawsuit and are based on identical evidence because they center around the

Association's obligations under the Governing Documents relating to maintenance of the Lift Station or other related breaches of fiduciary duties. [Filing No. 55 at 10.] They further contend that even though the Association is the only Defendant that was a party to the State Court Lawsuit, they still may assert that res judicata bars Conrood's claims because they were in privity with the Association. [Filing No. 55 at 7-8.] Defendants argue that all of Conrood's claims should therefore be dismissed. [Filing No. 55 at 10.]

Conrood argues in its response that the issues in this case are wholly separate from the issues in the State Court Lawsuit. [Filing No. 78 at 7.] It asserts that the State Court Lawsuit was based solely on damage to the Conrood Property from the Lift Station's failure, whereas this lawsuit alleges a pattern of misconduct by the Association, only a small portion of which involves the Lift Station, and thus its claims could not have been brought in the State Court Lawsuit. [Filing No. 78 at 7.] It argues that evidence supporting the claims in this lawsuit was only discovered after the 2019 bench trial in the State Court Lawsuit and during the proceedings to enforce the judgment. [Filing No. 78 at 7.] Accordingly, Conrood argues, the evidence in each lawsuit would be distinct. [Filing No. 78 at 8.] Finally, Conrood asserts that this lawsuit and the State Court Lawsuit are distinct because they seek different relief. [Filing No. 78 at 8.]

In their reply, Defendants note that Conrood does not dispute that this lawsuit and the State Court Lawsuit include the same parties or their privies. [Filing No. 79 at 2 n.1.] Defendants argue that Counts V through VII and Count XI are identical to the breach of contract and fiduciary duty claims in the State Court Lawsuit, and those claims have already been resolved. [Filing No. 79 at 2.]

"The doctrine of res judicata operates to preclude the litigation of matters that have already been litigated." *Northlake Nursing & Rehab. Ctr., L.L.C. v. State Dep't of Health*, 34 N.E.3d 268,

273 (Ind. Ct. App. 2015).[5]  "The principle of *res judicata* is divided into two branches: claim preclusion and issue preclusion." *Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 703 (Ind. Ct. App. 2005).  Defendants assert that claim preclusion applies here.

"Claim preclusion applies where a final judgment on the merits has been rendered and acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies." *Id.*  "The following four requirements must be satisfied for a claim to be precluded under the doctrine of res judicata: (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies." *Id.*  The parties do not dispute that the first, second, and fourth elements of claim preclusion are satisfied here, and dispute only the third element.

Indiana courts have used the "identical evidence test" in their determination of whether the current claim was, or could have been, brought in the prior matter. *Hilliard v. Jacobs*, 957 N.E.2d 1043, 1047 (Ind. Ct. App. 2011).  The identical evidence test asks "whether identical evidence will support the issues involved in both actions," *id.* at 1047 (quoting *MicroVote Gen. Corp. v. Indiana Election Comm'n*, 924 N.E.2d 184, 192 (Ind. Ct. App. 2010)), to answer "the most critical question for the application of *res judicata*[:] whether the present claim was within the issues of the first or whether the claim presents an attempt to split a cause of action or defense." *MicroVote*, 924 N.E.2d at 192.

---

[5] "The Full Faith and Credit Act, 28 U.S.C. § 1738, requires [the Court] to apply the preclusion law of the state that rendered the judgment to determine whether *res judicata* controls this case." *Robbins v. MED-1 Solutions, LLC*, 13 F.4th 652, 656 (7th Cir. 2021) (quotation and citation omitted).

In *Indianapolis Downs, LLC v. Herr*, the Indiana Court of Appeals analyzed whether res judicata applied to an action brought by a land-owning trust whose property was damaged by a nearby horse-racing facility diverting water from the facility to other lots.  834 N.E.2d 699, 702 (Ind. Ct. App 2005).  The action was brought after a separate suit was concluded between the horse-racing facility and a club, FRC, which operated on the trust's land.  *Id.*  FRC had alleged in the first lawsuit that the diverted water caused damage by forcing it to cancel part of its season.  *Id.*  A jury returned a verdict in favor of FRC in the first lawsuit and neither side appealed the verdict.  *Id.*  In the appeal of the second lawsuit, the Indiana Court of Appeals determined that res judicata was inapplicable to the trust's suit because while the two suits "arose from the same incidents, they are separate claims: the first for damage to FRC's business and the second for damage to the [t]rust's real estate," and "[e]ach claim requires proof that the other does not."  *Id.* at 704.  The court noted that the jury in the first suit was not instructed to consider damage to the land, but rather only to FRC's business interests.  *Id.*  The court concluded that res judicata did not apply because the claims in the two lawsuits were based on separate damages incurred by separate entities.  *Id.*

In *Hilliard v. Jacobs*, the Indiana Court of Appeals used the identical evidence test to determine whether res judicata applied to a widow's lawsuit to obtain the proceeds of a life insurance policy from her late husband's former business partner.  957 N.E.2d 1043, 1044-45 (Ind. Ct. App. 2011).  An earlier lawsuit filed by the widow's husband before his death had asked the court to require the business partner to terminate the life insurance policy that had been issued during the business partnership as part of a Cross–Purchase Agreement at the initiation of the business relationship.  *Id.* at 1045.  The husband had argued that keeping the life insurance policy was a violation of the Cross Purchase Agreement, but the court in the first lawsuit declined to

terminate the life insurance policy, and the husband died soon after. *Id.* Following the death of her husband, the widow filed the second lawsuit in a different court, "attempting to re-litigate the disposition of the life insurance policy and asserting previously-stricken claims based on the same facts and transaction as the first lawsuit." *Id.* The Indiana Court of Appeals determined that "[a]pplying a practical interpretation of the identical evidence test, the claims at issue in the present case could have been adjudicated in the first case." *Id.* at 1047. The court noted that "[e]ven though individual pieces of evidence may differ between the two sets of claims, . . . the same general evidence would be used to adjudicate all of [plaintiff's] claims," and held that res judicata applied to bar the second suit because "[a]ll of the legal theories of relief she puts forth in both sets of claims should have been adjudicated at once. Choosing to withhold evidence and theories of relief should not be the basis for allowing [plaintiff] another 'bite at the apple.'" *Id.*

This lawsuit was initiated after protracted litigation in the State Court Lawsuit, and Conroad clearly seeks damages related to the Flood and failure to maintain the Lift Station in connection with some of its claims. Complicating the Court's analysis is the fact that many of Conroad's claims seek different types of damages – those from the Flood or failure to maintain the Lift Station, but also damages for other acts. In some instances, it is difficult to discern exactly what actions allegedly caused the damages Conroad seeks or even what those damages are. But the bottom line is that the Court will not allow Conroad to seek the same damages that it sought,

or could have sought, in connection with the State Court Lawsuit.[6]  Specifically, the Court finds

that Counts V, VI, and VII are barred by claim preclusion to the extent that Conroad seeks damages

caused by the Flood and the Association's failure to maintain the Lift Station prior to the conclusion

of the State Court Lawsuit on December 29, 2020, but not to the extent that it seeks damages for

the Association's failure to maintain the Lift Station after December 29, 2020 or for other actions

unrelated to the Flood or failure to maintain the Lift Station.

Defendants' Motion for Judgment on the Pleadings is **GRANTED** as to Counts V, VI, and

VII to the extent they seek damages for the Flood or for failure to maintain the Lift Station before

December 29, 2020, but is **DENIED** to the extent those claims seek damages for failure to maintain

the Lift Station after December 29, 2020[7] or for other actions unrelated to the Flood or failure to

maintain the Lift Station.  The Court notes that it is ruling on a Motion for Judgment on the

Pleadings and that facts may develop through discovery which clarify the contours of Conroad's

claims – and, potentially, reveal that Conroad's claims are barred by claim preclusion to a greater

---

[6] Conroad's reliance on *Indianapolis Downs* for its argument that the claims here differ from the claims in the State Court Lawsuit is unavailing.  Though the court in *Indianapolis Downs* differentiated between claims for damage to the property and claims for damage to business interests related to that property in finding that res judicata did not bar the plaintiff's claims, the court was careful to note that the damages in the two suits were owed to separate entities.  That is not the case here.  While Conroad seeks redress for damage to the Conroad Property and damage to Conroad's business interests, both types of claims are held by Conroad and, as previously noted, both relate to the same events and would necessitate the introduction of the same evidence to adjudicate the two claims.

[7] The Court is mindful of the fact that it is ruling on a Motion for Judgment on the Pleadings, and generally may not consider information outside of the pleadings.  It notes, however, that an August 1, 2023 Order in the State Court Lawsuit – of which the Court may take judicial notice, *Wood*, 925 F.2d at 1582 – indicates that the Lift Station was applied to the State Court judgment on June 5, 2021, so Conroad has had possession of the Lift Station, in partial satisfaction of the judgment, for several years.  *See* August 1, 2023 Order in *Conroad Associates, L.P. v. Castleton Corner Owners Association, Inc., McKinley, Inc.*, No. 49D01-1612-PL-044978.  While the result is unclear, Conroad's possession of the Lift Station may have an impact on its claims seeking damages for failure to maintain it.

extent than is apparent at this stage of the litigation.  The Court's ruling herein does not prohibit Defendants from raising res judicata at a later appropriate time in this litigation if the facts discovered render further consideration of the issue appropriate.

### F.    Breach of Contract Claims Against Individual Defendants

Defendants contend that the Individual Defendants cannot be liable for breaches of the Governing Documents as they are not parties to those documents. [Filing No. 55 at 21.]  They argue that the Individual Defendants are not among the parties in privity under the Governing Documents, which is fatal to the breach of contract claims. [Filing No. 55 at 21.]

Conroad argues in its response that Defendants cannot assert that the Individual Defendants were not in privity with the Association when they previously argued that this was the case for purposes of res judicata.[8]  [Filing No. 78 at 15.]  It contends that corporate officers can be liable for failure to follow corporate requirements or for other wrongdoing.  [Filing No. 78 at 15.] Conroad asserts that the only claims Defendants' arguments apply to are Counts V, VI, and VII and that the Court should not dismiss the Individual Defendants from the other claims in which they are named.  [Filing No. 78 at 16.]

Defendants reply that privity for the purpose of Conroad's breach of contract claims is a distinct concept from privity in the res judicata context.  [Filing No. 79 at 7.]

Initially, the Court notes that Defendants' claim that the Individual Defendants lack privity with the Association does not conflict with their argument that the parties in the State Court Lawsuit and this lawsuit were in privity for the purposes of res judicata.  With regard to the res judicata analysis, "[a] privy is one who after rendition of [a] judgment has acquired an interest in

---

[8] Res judicata requires that the parties in the State Court Lawsuit and the instant lawsuit be the same or in privity with those parties, and the parties here did not dispute that this requirement was met when analyzing whether res judicata applies.

the subject matter affected by the judgment, or whose interests are represented by a party to the action." *Taylor v. St. Vincent Salem Hosp., Inc.*, 180 N.E.3d 278, 285 n.4 (Ind. Ct. App. 2021) (quotations and citations omitted).  In contrast, the concept of privity with regard to breach of contract claims provides that "[g]enerally, only those who are parties to a contract or those in privity with a party have the right to enforce the contract. . . . Privity has been defined as mutual or successive relationships to the same right of property, or an identification of interest of one person with another as to represent the same legal right." *Daimler Chrysler Corp. v. Franklin*, 814 N.E.2d 281, 285 (Ind. Ct. App. 2004) (quotations and citations omitted).  Thus, the Individual Defendants may be privy to the parties in the State Court Lawsuit for purposes of res judicata, but may not also be in privity with the Association such that they could be held liable for breach of the Governing Documents.

Under Indiana law, "[t]he articles of incorporation and bylaws of a nonprofit corporation constitute a contract between the corporation and its members." *Bay Colony Civic Corp. v. Pearl Gasper Tr.*, 984 N.E.2d 231, 235 (Ind. Ct. App. 2013).  Only those who are parties to the agreement are subject to liability for breach of contract. *DiMizio v. Romo*, 756 N.E.2d 1018, 1022 (Ind. Ct. App. 2001) ("A person typically cannot be held liable for breach of contract unless it is shown that she was a party to the contract. . . . Contractual obligations are personal in nature and privity of contract is essential for the establishment of contractual liability.") (citations omitted).  Because the Governing Documents are agreements between the Association and its members, including Conroad, the Individual Defendants are not contracting parties to the documents.  Conroad thus can bring breach of contract claims against the Association but not against the Individual Defendants.

The Court **GRANTS** Defendants' Motion for Judgment on the Pleadings to the extent that it dismisses Counts V, VI, and VII as against the Individual Defendants.

### G.      Fraud Allegations

Defendants argue that Conroad's fraud claims (Counts VIII through X, and XIII) are improperly premised on the same conduct that forms the basis of Conrad's breach of contract claims (Counts V, VI, and VII). [Filing No. 55 at 23.]  Further, they argue that Conrad's Second Amended Complaint fails to meet the heightened pleading standard for fraud claims set forth in Rule 9(b).  [Filing No. 55 at 24.]  They contend that Conrad's allegations of fraudulent statements and actions are not specific as to the individuals committing the fraud or the timing or dates of the occurrences.  [Filing No. 55 at 24.]  They argue that lumping together the Defendants and not setting forth specific allegations against each is insufficient.  [Filing No. 55 at 25.]

Conroad responds that its fraud claims are wholly distinct from its breach of contract claims because it sets forth allegations that are not encompassed by its breach of contract claims, such as misallocation of funds and misrepresentations made to Conroad.  [Filing No. 78 at 18.]  It contends that Defendants overlooked allegations in the Second Amended Complaint that provide the particularized details required by Rule 9.  [Filing No. 78 at 19.]  It asserts that the Second Amended Complaint alleges that the Association, Mr. Larmore, and Ms. Scudder committed fraudulent acts on December 15, 2016 and in January 2020, February 2020, and March 2020. [Filing No. 78 at 20.]

Defendants reply that Conroad cannot show that the fraud claims are separate from the breach of contract claims because the alleged illicit scheme relates only to rights and responsibilities stemming from the Governing Documents.  [Filing No 79 at 9.]  They contend that Conrad's attempt to fill in the gaps in the allegations is insufficient because it fails to make any

specific allegations beyond stating that the Association and its officers made false representations. [Filing No. 79 at 10.]

While "[i]t is well-settled that duplicative counts in a complaint may be properly dismissed," *DeGeer v. Gillis*, 707 F.Supp.2d 784, 796 (N.D. Ill. 2010), the Court finds that Conroad's fraud and breach of contract claims are based on different alleged actions. The breach of contract claims relate to alleged failures by the Association, Mr. Larmore, Ms. Scudder, and Mr. Shook to act in accordance with the Governing Documents. Conversely, the fraud claims relate to actions other than breaching the Governing documents – for example, lying to Association members about the fact that the Association had been dissolved. [Filing No. 29 at 34.] The fraud and contract claims are not duplicative and the Court will not dismiss the fraud claims for that reason.

As for whether Conroad has alleged the fraud claims with sufficient specificity, Rule 9(b) requires a party who alleges fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This requirement "is designed to discourage a 'sue first, ask questions later' philosophy." *Pirelli Armstrong Tire Corp. Retiree Med. Bens. Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (quoting *Berman v. Richford Indus., Inc.,* 1978 WL 1104, at *5 (S.D. N.Y. Jul. 28, 1978)). "In adding flesh to the bones of the word particularity…a plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud – 'the first paragraph of any newspaper story.'" *Pirelli*, 631 F.3d at 441-42 (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009)). Fraud allegations should not "lump multiple defendants together," but should "inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant." *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20

F.3d 771, 778 (7th Cir. 1994) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'").

Conroad alleges the following in connection with its fraud claims:

- "The Association and its officers lied to the Association's membership regarding the Association's dissolved status and the fact that, as of December 2016, all documents needed to successfully reinstate the Association and bring it back into good standing had been filed";

- "[T]he Association engaged in numerous activities it was not permitted to engage in under Indiana law, including but not limited to collecting dues from the members and levying assessments against the members";

- "[T]he Association and its officers may have taken additional fraudulent actions with regard to dues and assessments collected";

- "[T]he Association and its officers engaged in further fraud by using dues and assessments collected not for their proper purpose and as approved by the Association's membership under the Governing Documents";

- "The Association and its officers represented to the Association's membership that, as of December 2016, all documents needed to successfully reinstate the Association and bring it back into good standing had been filed";

- "Arciterra…, McKinley, the Association, Larmore, Shook, and Scudder engaged in a years-long scheme to defraud members of the Association by levying dues and assessments upon members, [and] funneling them through various Arciterra subsidiaries…until Arciterra was able to use those funds for its own purposes";

- "Larmore, Shook, and Scudder aided in the fraud by acting as purported officers of the Association to direct members to pay such dues and assessments";

- "Larmore, Shook, Scudder, and the Association all represented that the dues and assessments would be used for proper purpose[s] under the Governing Documents"; and

- "Defendants intended to deceive Conroad and the other members of the Association into paying dues and assessments Arciterra could then use for its own purposes."

[Filing No. 29 at 33-37.]

While Conroad specifically names Mr. Larmore, Mr. Shook, and Ms. Scudder, it does not allege what specific acts each individual took.  Conroad alleges that Mr. Larmore, Mr. Shook, and Ms. Scudder, along with the Association (and in some cases, Arciterra and McKinley), lied about the Association's status, collected dues and levied assessments against members, used dues and assessments for improper purposes, and may have taken additional fraudulent actions related to the dues and assessments.  But Conroad does not provide any specifics regarding these actions – for example, when the actions took place, for what improper purposes the dues were used, which Defendant took which actions, or where or how the actions occurred.  The Court finds that Conroad's allegations in connection with its fraud claims do not meet Rule 9(b)'s specificity requirement and **GRANTS** Defendants' Motion for Judgment on the Pleadings as to those claims (Counts VIII, IX, X, and XIII).[9]

### H.     Injunctive Relief for Corporate Officer's Actions

Defendants argue that Conroad is not entitled to the injunctive relief sought in Counts IV and XIV of the Second Amended Complaint because Indiana law does not permit a member to challenge the validity of the Association's actions or remove the Association's officers.  [Filing No. 55 at 19.]  They argue that there has been no finding that any director breached a fiduciary duty owed to Conroad and that the Governing Documents lay out the process for removing directors and Conroad cannot make an end-run around those documents through this suit because it would not be able to get the votes for its desired outcomes in director elections.  [Filing No. 55 at 20-21.]

---

[9] In Count XIII, Conroad seeks treble damages under the Indiana Crime Victims' Relief Act, Ind. Code §34-24-3-1, as an alleged "victim of fraud."  [Filing No. 29 at 39.]  Because Count XIII is dependent on the success of Conroad's fraud claims, it is also dismissed.

Conroad argues that it does not ask the Court to reverse any actions taken by the Association and instead only asks for injunctions requiring the Association to act in accordance with its governing documents moving forward. [Filing No. 78 at 14.]

Defendants reply that Conroad's claim that it seeks only prospective relief is belied by the Second Amended Complaint itself, which asks the Court to invalidate all actions that the Association has taken and asks the Court to effectively dissolve the Association. [Filing No. 79 at 6.]

Injunctive relief is a remedy that must be tied to a cause of action, and is not a cause of action itself. *See Davis v. Passman*, 442 U.S. 228, 239 (1979) ("[W]hether a litigant has a 'cause of action' is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive."). Indeed, the "claims" Conroad sets forth in Counts IV and XIV are duplicative of what it sets forth in its "Prayer for Relief" section. [*See* Filing No. 29 at 40-41.] The Court **DISMISSES** Counts IV and XIV for this reason alone.

In any event, there are numerous issues with the injunctive relief that Conroad seeks. First, Conroad seeks injunctive relief that would, at least in part, undo actions by the Association. [*See* Filing No. 29 at 29-30 (requesting an injunction in Count IV requiring the Individual Defendants to step down as officers of the Association); Filing No. 29 at 39-40 (requesting an injunction in Count XIV that equates to dissolving the Association).] The Indiana Code provides that "the validity of corporate action may not be challenged on the ground that the corporation lacks or lacked power to act" and allows only the attorney general or a director of the corporation to challenge a corporation's power "in a proceeding against the corporation for a declaratory judgment or to enjoin an act where a third party has not acquired rights." Ind. Code § 23-17-4-4. Conroad is not a director of the Association and cannot seek injunctive relief related to the validity

of the Association's actions – which is exactly what it attempts to do in Counts IV and XIV. Additionally, Indiana Code § 23-17-12-13 outlines the circumstances in which "[t]he circuit court or superior court of the county where a corporation's principal office is located may remove a director of the corporation from office," requiring certain findings by the state court.

Second, Conroad requests an injunction requiring the Association to properly elect a Board of Directors, [Filing No. 29 at 30], but an injunction requiring compliance with the law – or, in this case, the Governing Documents – is improper. *See E.E.O.C. v. AutoZone*, 707 F.3d 824, 841 (7th Cir. 2013) ("An obey-the-law injunction departs from the traditional equitable principle that injunctions should prohibit no more than the violation established in the litigation or similar conduct reasonably related to the violation.").

Finally, Conroad requests an injunction requiring the Association to "submit an account of all funds spent by the Association from 2005 to 2020, as well as dues collected from the Association's members, such as Conroad, in order to establish damages from wrongfully paid assessments." [Filing No. 29 at 40.]  But as Conroad acknowledges, this is a way for it to establish damages in connection with its breach of contract claims.  As discussed above, it is not a proper claim, but rather a remedy that Conroad seeks in connection with its breach of contract claims. *See Artistic Framing, Inc. v. Hospitality Resources, Inc.*, 2013 WL 317019, at *2 (N.D. Ill. 2013) (dismissing claim "for an accounting" which requested that the court order defendant to provide its books and records for an audit and noting that "it is clear that a breach of contract claim would provide an adequate legal remedy for any los[t] profits incurred"). Alternatively, Conroad may seek information from the Association's books and records through discovery.  For these reasons, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings as to Counts IV and XIV and those claims are **DISMISSED**.

## I.    Compliance with Rule 23.1

Defendants argue that Count XI for breach of fiduciary duty should be dismissed because Conroad failed to comply with Rule 23.1.  [Filing No. 55 at 22.]  They argue that Conroad has brought this claim derivatively on behalf of itself and the other members of the Association because Conroad has not alleged an injury distinct from that of other Association members.  [Filing No. 55 at 22.]  They contend that, because this is a derivative claim, the requirements of Rule 23.1 apply, which require Conroad to file a verified complaint and state with particularity efforts to obtain the desired action from directors and members, and that Conroad did not comply with those requirements.  [Filing No. 55 at 23.]

Conroad responds that Rule 23.1 does not apply because its breach of fiduciary duty claim is direct and based on distinct personal injuries, rather than on broad injuries to Association members.  [Filing No. 78 at 17-18.]  It asserts that the Association's failure to maintain common property as required by the Governing Documents has a unique detrimental impact on the value of the Conroad Property, which is "immediately downhill from the continually dysfunctional [L]ift [S]tation."  [Filing No. 78 at 17.]

Defendants reply that Conroad's contention that it is uniquely harmed fails because it mirrors the claim in the State Court Lawsuit for which it has already obtained judgment.  [Filing No. 79 at 8.]  They also contend that the Second Amended Complaint does not itself address any particularized loss by Conroad because it refers only to damages suffered by "Conroad and other members."  [Filing No. 79 at 8; Filing No. 29 at 38.]

Rule 23.1 sets forth various prerequisites, pleading requirements, and conditions for the settlement, dismissal, and compromise of derivative actions.  Fed. R. Civ. P. 23.1.  Conroad does not contend that its Second Amended Complaint complies with the requirements of Rule 23.1 –

rather, the parties' dispute focuses solely on whether Rule 23.1 applies to Count XI in the first instance.

Generally speaking, a direct action is brought by a shareholder in its own name against a corporation to remedy an injury sustained by that shareholder, while a derivative action is brought by the shareholder on behalf of the corporation to remedy an injury sustained by the corporation. See *G & N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 234-35 (Ind. 2001). The dispositive consideration is whether the right asserted belongs to the shareholder personally or to the corporation. *Id.* at 235. However, "[t]he distinction between direct and derivative actions has been complicated in more recent years by recognition in many jurisdictions, including Indiana, of direct actions by shareholders in close corporations for derivative claims." *Id.* at 236.

In *Barth v. Barth*, the Indiana Supreme Court recognized that, in some circumstances, a shareholder in a close corporation where "the shareholders are more realistically viewed as partners" can bring claims regarding harm to the corporation directly against other shareholders. *Id.* (discussing *Barth v. Barth*, 659 N.E.2d 559, 561-62 (Ind. 1995)). Specifically, the *Barth* Court ruled that a shareholder of a close corporation may proceed against a fellow shareholder in a direct action if doing so would not: "(1) unfairly expose the corporation or the defendants to a multiplicity of actions, (2) materially prejudice the interests of creditors of the corporation, or (3) interfere with a fair distribution of the recovery among all interested persons." *Id.* at 236 (citing *Barth*, 659 N.E.2d at 561–62). This rule, often referred to in the caselaw as the *Barth* exception, "recognizes a limited exception to the general rule preventing shareholders from maintaining actions in their own names and grants trial courts the discretion to permit a shareholder in a closely held corporation to bring a direct action to recover for injury to the corporation, even when such a claim would be derivative." *Kesling v. Kesling*, 83 N.E.3d 111, 116 (Ind. Ct. App. 2017).

In *McClean v. Trisler*, the Indiana Court of Appeals determined that a direct claim by an LLC's member against the LLC, other members of the LLC, and other entities may proceed under the *Barth* exception. 161 N.E.3d 1259, 1269 (Ind. Ct. App. 2020). The court noted that there was no risk of multiplicity of action because all three members of the corporation were involved in the suit and "[s]imply put, there is nobody else to sue them." *Id.* The court found that "there is no evidence in the record that [the LLC] has any creditors who could be prejudiced by a judgment in [the shareholder's] favor." *Id.* It also noted that there was no potential for interference with the distribution of recovery among interested parties because "there is no indication that there is any party other than [the shareholder] that is entitled to any [relief]." *Id.*

Conversely, in *Kesling*, the Indiana Court of Appeals affirmed the trial court's decision not to apply the *Barth* exception. 83 N.E.3d at 119. First, the court stated that the shareholders "have failed to present sufficient facts to show that permitting a direct action will not unfairly expose [the defendants] to a multiplicity of actions" because there were ten shareholders and only four were involved in the litigation. *Id.* Second, the court found that there was "no evidence that a direct action by the [s]hareholders will not materially prejudice the interests of creditors of the corporation," and that the shareholders "presented only bald assertions, not facts, to show that the protection of creditors principle will not be implicated here." *Id.* The Court further stated that "most significantly, the [s]hareholders have not established that a direct action will not interfere with a fair distribution of recovery among all interested persons" because the six other shareholders "would not be protected if the [s]hareholders were allowed to proceed and recover damages from [the defendants] directly and individually." *Id.*

In this case, none of the actions Conroad sets forth in Count XI ("misusing or misappropriating Association funds, self-dealing, hiding or failing to disclose important

information to members, failing to elect a Board of Directors, failing to observe other formalities and following the Governing Documents, and improperly appointing themselves as officers," [Filing No. 29 at 37–38]), demonstrate that any breaches of fiduciary duties caused damage to a particular shareholder versus the Association as a whole. Conroad has not stated how these actions injured it in a manner distinct from any other member. Conroad argues that the failure to maintain the Lift Station had a particularly detrimental effect on its property, rather than on the Association as a whole, but it admits that it was not the only member affected by the alleged breach of fiduciary duty.

Further, the Court cannot find, based on the pleadings alone, that the *Barth* exception allows Conroad to pursue this claim as a direct rather than a derivative action. Like in *Kesling*, there are a multitude of members who may be able to bring claims against Defendants and the record demonstrates that Conroad owns just under two percent of the acreage at Castleton Corner and that various other businesses own property there, including those not shown to be under the control of any Defendant, creating a risk of multiplicity of actions. [Filing No. 29-9 at 2.] Next, there is no allegation one way or the other that there are creditors of Castleton who may be harmed by this litigation. Because neither party has addressed this requirement of the *Barth* exception, the Court finds that this element has not been met. Lastly, as in *Kesling*, there are multiple shareholders whose interests in a fair distribution of recovery could be interfered with should this suit proceed. For these reasons, none of the requirements of the *Barth* exception to the general rule prohibiting derivative suits in the shareholder's name are met. Conroad's claim in Count XI is therefore improperly brought as a direct action rather than a derivative suit. Because Conroad has failed to comply with the requirements for derivative suits set forth in Rule 23.1, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings as it relates to Count XI.

**IV.**

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings, [54], is:

- **DENIED IN PART** to the extent the Court finds that it has personal jurisdiction over Ms. Scudder;

- **GRANTED** as to Counts I, II, and III, and those claims are **DISMISSED WITH PREJUDICE**;

- **GRANTED** as to Counts V, VI, and VII, to the extent those claims are asserted against the Individual Defendants and to the extent those claims seek damages caused by the Flood or the Association's failure to maintain the Lift Station prior to December 29, 2020 and those claims are **DISMISSED WITH PREJUDICE**;

- **DENIED IN PART** as to Counts V, VI, and VII, to the extent those claims are asserted against the Association and seek damages for the Association's failure to maintain the Lift Station after December 29, 2020 or for other actions unrelated to the Flood or failure to maintain the Lift Station;

- **GRANTED** as to Counts VIII, IX, X, XII, and XIII, and those claims are **DISMISSED WITH PREJUDICE**;

- **GRANTED** as to Count XI and that claim is **DISMISSED WITH PREJUDICE**; and

- **GRANTED** as to Counts IV and XIV and those claims are **DISMISSED WITH PREJUDICE**.[10]

---

[10] The Court finds that Counts I, II, III, and IV; Counts V, VI, and VII to the extent those claims are asserted against the Individual Defendants and to the extent those claims seek damages caused by the Flood or the Association's failure to maintain the Lift Station prior to December 29, 2020; and Counts XI, XII, and XIV are properly dismissed with prejudice because Conroad would not be able to cure the issues with those claims through an amendment. *See Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) ("[D]istrict courts have broad discretion to deny leave to amend where…the amendment would be futile."). As noted above, however, should Conroad obtain a judgment in connection with its breach of contract claims in this action, it may seek to pierce the corporate veil to hold Mr. Larmore, Mr. Shook, Ms. Scudder or entities other than the Association liable if it has a good faith basis to assert that theory in proceedings supplemental. The Court also finds that Counts VIII, IX, X, and XIII are properly dismissed with prejudice because Conroad has already had multiple opportunities to plead its fraud claims with the requisite particularity and has failed to do so. The Court need not give it another chance. *Id.* (court has discretion to deny leave to amend where there has been a "repeated failure to cure deficiencies").

No partial final judgment shall issue.

The following claims remain:

- Counts V, VI, and VII against the Association, to the extent those claims seek damages for the Association's failure to maintain the Lift Station after December 29, 2020 or for other actions unrelated to the Flood or failure to maintain the Lift Station.

The Court requests that the Magistrate Judge confer with the parties as soon as practicable regarding resolution of the remaining claims short of trial.

Date: 8/4/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**